No. 12,600.

DEFREECE ET AL *v.* RANKIN.
(7 P. [2d] 950)

Decided February 1, 1932.

Mr. James P. Veerkamp, for plaintiffs in error.

Mr. C. H. Allen, Mr. Albert L. Moses, for defendant in error.

*In Department.*

Mr. Justice Moore delivered the opinion of the court.

Pete and Maggie Defreece sued Wallace and Mary Rankin to recover damages alleged to have been sustained as the result of defendants' false representations in connection with the purchase by the plaintiffs of a farm in Rio Grande county. The court directed a verdict in favor of defendant Mary A. Rankin and submitted the case against Wallace Rankin to the jury, which returned a verdict for the plaintiffs assessing damages at $3,552.97, for which amount judgment was rendered. Plaintiffs are here seeking a reversal of the judgment as to Mary A. Rankin, and defendant Wallace Rankin, by cross-error, seeks to reverse the judgment against him.

The complaint charged in substance that plaintiffs, residents of Latham, Kansas, were prospective purchasers of a farm in the San Luis Valley near Monte Vista, Colorado; that defendants falsely represented that they would cause to be purchased from the owner, the Parsons Commercial Bank, the farm in question and "let them [plaintiffs] have it at the actual cost which they [defendants] stated was $16,000, or $100 per acre," the least amount for which it could be purchased; that plaintiffs through the defendants purchased the farm for $16,000,

paying $7,000 in cash, the balance, $9,000, being secured by a mortgage to the defendants; that defendants caused the Parsons Commercial Bank to deliver its warranty deed to plaintiffs upon a payment by defendants to it of $12,000. Fraud was denied by defendants. Defendants counterclaimed for personal property sold and delivered. Plaintiffs admit an indebtedness of $258.47, which defendants conceded during the trial to be the only amount due them under the cross-complaint.

The record discloses that on April 18, 1927, the Parsons Commercial Bank contracted to sell, and the defendants agreed to buy, the land in question for $12,000, defendants to assume all unpaid payments on a certain water rights contract.

In September, 1927, Pete Defreece, accompanied by his son-in-law, Clarence Stewart, came to Colorado as a prospective purchaser of a farm in the San Luis Valley. He presented to defendants a letter of introduction from John Rankin, Wallace's brother, who was a banker in Latham, Kansas, and Pete's intimate friend for twenty years.

Defreece and his son-in-law, Stewart, stayed overnight at the Rankin farm house. Defreece testified that during the evening defendant, Wallace Rankin, mentioned the fact that the best land in the valley was within three miles from where he lived and that the Parsons Commercial Bank had the best buy he knew of. The next morning Wallace Rankin further stated to Defreece and Stewart in the presence of his wife: "Me and my wife talked it over last night and we were going to buy this land out here that brother John had and he said I wouldn't beat you fellows like that, I would be beating brother John. He said I could have the land at cost. He said I was going to buy that but we are getting old and don't need it and he said he would let me have it. He said there would be no cost for what he done and would let me have it at $100.00 per acre. [The farm contained 160 acres.] He

said the bank had the land and he was renting it." This testimony was corroborated by that of Stewart.

Thereafter, Rankin sent Defreece, accompanied by Hollingsworth, a real estate man, to view the property. Defreece returned home. Thereafter a letter written on October 4, 1927, by Wallace Rankin and signed "Mary and Wallace," addressed to J. Ed. Rankin, Latham, Kansas, requested "now you see Mr. Defreece and ask him what kind of a contract he wants." October 22, 1927, Defreece sent to Wallace Rankin his check for $2,000, "down payment on 160 acres of land joining his land." Upon receipt of this check Wallace wrote and sent the following letter:

"Monte Vista, Colo., Oct. 27, 1927.

"Rec'd of Mr. Pete Defreece

"The sum of $2,000.00 in form of a chk. on the Peoples State Bank of Latham, Kans., as payment on the N. E. qr. Sec. 32-40-7 E. M. N. M. situated in Rio Grande Co., State of Colo. and it is further agreed that in case that the above said Pete Defreece does not stand and comply by this agreement as follows via, to pay $16,000.00/100 for same as follows $2,000.00/100 cash and $6,000.00/100 Mch. 1st, 1928. The Bal. $8,000.00/100 to be a mortgage lein upon the above said described land to be paid in yrly payments running over a period of 5 yrs then he is to forfeit the above $2,000.00 as damages to the said owner of above land for not fullfilling the contract.

"Signed this 27th day of Oct. 1927.

"J. Frank Steele."

Wallace admitted that he signed the name of J. Frank Steele to the foregoing, claiming that he had Steele's consent therefor and that he did not sign his own name because he wanted to protect the bank's interest in the property. On February 21, 1928, Defreece sent Wallace Rankin his check for $5,000, as "second payment on the farm." On February 28, 1928, the Parsons Commercial Bank, at defendant's request, executed its warranty deed

to plaintiffs covering the land in question together with water rights thereon free and clear from all encumbrances, the consideration being "One dollar and other valuable considerations." Plaintiffs executed a mortgage on said land to defendant, Mary A. Rankin, securing their note for $9,000, the balance of the purchase price. This mortgage was made to defendant, Mary A. Rankin, because, according to the testimony of Defreece, "he [Wallace] said she [Mary] had paid the balance of $9,000." Defendants paid the bank $12,000, and the balance due on the water rights contract, pursuant to the terms of their contract of purchase with the bank. The $7,000 sent by Defreece was paid to the bank by defendants and at least $3,000 of the balance due under defendants' contract of purchase was paid out of the personal funds of the defendant, Mary Rankin. Plaintiffs at no time knew of the existence of defendants' contract of purchase.

Defendant Mary Rankin testified:

"Q. Well, when the deal was finally closed up who put up the money, the extra money in this place [to pay the bank], you or Wallace Rankin? A. I put some in, sir.

"Q. How much? A. Three thousand dollars.

"Q. And you took a mortgage back for nine thousand? A. Well we paid more than that, it came out of our pocket didn't it? * * * I sold that mortgage about the 8th day of February.

"Q. About the time suit was started? A. Yes, sir, before that."

She further stated:

"Q. When did you first know that you had to put up the nine thousand dollars or the difference between the seven thousand Defreece furnished and the sixteen thousand that was the price of the land he paid you for it? A. I don't remember when I did know that.

"Q. You did furnish the money though, did you? A. Yes, sir.

"Q. You paid nine thousand dollars in addition to the

seven thousand to the Parsons bank did you? A. Well we paid for the place.

"Q. How much did you pay for the place? A. $12,000.00 and I paid the water works.

"Q. How much did you pay for the water works, the reservoir and taxes? A. I don't know, Mr. Rankin has it, I always sign the checks and Mr. Rankin uses them as he pleases because I trust him. I was trusting him when he dealt with Defreece."

She denied knowledge of the letter sent to J. Ed. Rankin signed "Mary and Wallace" and the receipt for $2,000 signed "J. Frank Steele" and denied hearing any conversation in regard to the farm.

Defendant, Wallace Rankin, denied that he agreed to sell the farm to Defreece for what it cost him and stated:

"Q. What did you price it to him for? A. $16,000.00.

"Q. What did you say to him? A. I told him I had a contract with the bank and had paid $2,000.00 on it but had not paid the rest. * * * We had bought it in April.

"Q. Didn't you say to him I will let you have this at just what it cost? A. I did not."

Mrs. Rankin paid Hollingsworth, the real estate agent, a commission for assisting in the sale of the farm.

H. A. Bryant, who succeeded J. Frank Steele as president of the Parsons Commercial Bank, testified:

"Q. Now I notice in this deed you express the consideration as one dollar and other valuable consideration, what was the other valuable consideration besides the one dollar? A. $11,999.00.

"Q. Why didn't you put it $12,000.00? A. That was on request, they (Rankins) requested we draw the deed to Defreece and put one dollar and other valuable consideration.

"Q. Do you know anything about this contract (Plaintiff's Exhibit 'B') being drawn? A. No, sir. I am sure Mr. Steele knew nothing about it. That is not his signature."

The unpaid payments on the water contract which de-

fendants by their contract assumed and agreed to pay aggregated $179.15.

Defendant, Wallace Rankin, in his cross assignment of errors urges that the evidence is insufficient to support the verdict as against him and that the amount thereof is excessive. The foregoing recital of facts in evidence clearly discloses that the evidence was amply sufficient to support the verdict of the jury as against Wallace Rankin. It is quite true that the charges of fraud made by the plaintiffs were repeatedly and vigorously denied by defendants.

The jurors saw and heard the witnesses, observed their manner and demeanor upon the witness stand and all circumstances occurring during the trial of the case. They who heard the spoken word were in a much better position to determine the truth than we who read the written. The jury by their verdict under instructions which adequately stated the law, placed its stamp of veracity upon plaintiffs' testimony and the judgment rendered thereon will not be disturbed. *Kobebell v. Diers Bros.,* 87 Colo. 67, 285 Pac. 165; *Bucci v. Pizza,* 90 Colo. 30, 6 P. (2d) 5.

It is urged that the amount of the verdict is excessive. According to our calculations based upon the evidence, the amount of the verdict is the exact amount, with the exception of a few pennies, which the jury should have returned under the evidence and the instructions of the court. The jury having found for the plaintiffs, the measure of damages was the difference between $16,000, the amount paid by plaintiffs, and $12,179.15, the amount paid by the defendants to the Parsons Commercial Bank, less $258.48, together with interest on this last item at the rate of eight per cent per annum from January 1, 1929, to the date of the trial, June 17, 1929, the admitted indebtedness of plaintiffs to defendants on defendants' cross-complaint.

The court sustained a motion for a directed verdict in favor of defendant, Mary A. Rankin, at the close

of plaintiffs' case. At that time, the evidence of the plaintiffs was uncontradicted and in the absence of proof to the contrary would have supported a verdict for plaintiffs as against Mary A. Rankin. The court therefore erred in directing a verdict in her favor. The court should have required defendant Mary A. Rankin to proceed with her defense and should have submitted the issues joined as to her to the jury.

In view of the necessity of a new trial as to defendant, Mary A. Rankin, we refrain at this time from further comment upon the sufficiency of the evidence as to her.

The judgment of the court as to defendant, Wallace Rankin, is affirmed.

The judgment of the court as to defendant, Mary A. Rankin, is reversed, the cause as to her is remanded to the district court for a new trial and the trial court is directed, in the event of a verdict for the plaintiff, to instruct the jury to assess plaintiffs' damages in the sum of $3,552.97.

Mr. Chief Justice Adams, Mr. Justice Butler and Mr. Justice Alter concur.